UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
FLORENTINO BERMUDEZ,  FRANKLYN ARCHER,
MIGUEL MARTINEZ, and OSCAR SUAZO, individually and
on behalf of all others similarly situated,

                                Plaintiffs,

                -against-

CAPCON CONSTRUCTION INDUSTRIES CORP.,
CAPCON CONSTRUCTION SUPPLY CORP., JAB
MASONRY CORP., AGRA MASONRY INC., AGRA
INDUSTRIES USA CORP, ALEX SHVARTSBERG,
DARREN CAPUTO, AND MARYANN FURMAN,

                                Defendants.
-------------------------------------------------------------------------X

Civil Action No.
22-cv-002235-RPK-CLP

SECOND AMENDED
COMPLAINT

Plaintiffs Florentino Bermudez, Franklyn Archer, Miguel Martinez, and Oscar Suazo (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, Capcon Construction Industries Corp. ("CCI"), Capcon Construction Supply Corp. ("CCS"), Jab Masonry Corp. ("Jab"), Agra Masonry Inc. ("Agra Masonry"), Agra Industries USA Corp ("Agra Industries"), Alex Shvartsberg, Darren Caputo, and Maryann Furman (collectively, "Defendants"), respectfully allege as follows:

**I. Nature of Action, Jurisdiction, and Venue**

1.      This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA"); the New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL"); and 26 U.S.C. § 7434.

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA and 26 U.S.C. § 7434.

3.      This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## II. Parties

5.      Plaintiffs are individuals residing in the State of New York.

6.      At all relevant times, Plaintiffs were employed by Defendants.

7.      While employed with Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

8.      CCI is a domestic corporation with its principal place of business located at 469 Illington Road, Ossining, New York 10562.

9.      CCS is a domestic corporation with its principal place of business located at 469 Illington Road, Ossining, New York 10562.

10.     Jab is a domestic corporation with its principal place of business located at 469 Illington Road, Ossining, New York 10562.

11.     Agra Masonry is a domestic corporation with its principal place of business located at 2626 East 14th Street, Brooklyn, New York 11235.

12.     Agra Industries is a domestic corporation with its principal place of business located at 2626 East 14th Street, Brooklyn, New York 11235.

2

13.     CCI, CCS, Jab, Agra Masonry, and Agra Industries (collectively, the "Companies") are contractors that provide construction services in the greater New York area.

14.     Defendants Shvartsberg, Caputo, and Furman are individuals residing, upon information and belief, in the state of New York.

15.     At all relevant times, Shvartsberg, Caputo, and Furman were, and still are, officers, directors, shareholders, owners, and/or persons in control of the Companies, who exercise significant control over the Companies' operations and have the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

16.     During all relevant times, the Companies had common owners, officers, and directors, and/or were controlled by Shvartsberg, Caputo, and Furman.

17.     During all relevant times, the Companies operated out of the same locations and at the same addresses.

18.     At all relevant times, the Companies were operating as one business utilizing many of the same employees, customers, offices, management, equipment, and inventory.

19.     Throughout their employment, Plaintiffs reported to Shvartsberg and Caputo, as well as to the foreman assigned to each job, who were their direct supervisors at the Companies' worksites.

20.     During all relevant times, Furman, as president of Agra Masonry, had control and authority over all employees' wages and  approved and signed employee checks issued by Agra Masonry.

21. Defendants are a single enterprise and/or joint employers, who jointly managed, supervised, hired, fired, and controlled the manner of pay of Plaintiffs, and are jointly and severally liable in this matter.

22. At all relevant times, Plaintiffs were and/or are covered employees within the meaning of the FLSA and the NYLL.

23. Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs.

24. Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

25. Defendants operate in interstate commerce.

26. Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

27. The First and Third Causes of Action in this Complaint, which arise out of the FLSA, are brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

28. The FLSA Collective Plaintiffs consist of no less than fifteen (15) similarly situated current and/or former employees of Defendants who have been victims of Defendants' common policies and practices that have violated the FLSA Collective Plaintiffs' rights under the FLSA by, *inter alia*, willfully denying them minimum and overtime wages and other pay.

29. As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter*

4

*alia*, failing to pay employees minimum wages for all hours worked and the applicable overtime rate for all time worked in excess of forty (40) hours per week.

30.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

31.    Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

32.    The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

#### IV. Rule 23 Class Allegations

33.    Plaintiffs bring the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Twelfth Causes of Action under the NYLL and 26 U.S.C. § 7434 on behalf of themselves and all similarly situated employees who were employed by Defendants since the date six (6) years prior to the filing of the Complaint (the "Class Period") pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23.

34.    All said persons are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

35.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts from which to calculate that number are presently within the sole control of Defendants, upon information and belief, there are no less than 400 members in the Class.

36.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime wages; failing to pay minimum wages; failing to pay spread of hour wages; making unlawful deductions from wages; failing to timely pay wages; failing to provide payroll notices; failing to provide wage statements; and filing fraudulent of information returns. Defendants' companywide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

37.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests adverse to the Class. Plaintiffs are represented by attorneys who are experienced and competent in employment and wage and hour litigation and class action litigation and have many times previously represented plaintiffs in wage and hour cases.

38.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy --- particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants.

39.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

40.     Because the losses, injuries, and damages suffered by each of the individual Class members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

41.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

42.     The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

43.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

a.   Whether Defendants employed Plaintiffs and the Class within the meaning of the NYLL;

b.   Whether Defendants failed to pay Plaintiffs and the Class overtime compensation for all hours worked in excess of forty (40) hours per workweek;

c.   Whether Defendants failed to pay Plaintiffs and the Class minimum wages for all hours worked per week as required by NYLL;

d.   Whether Defendants failed to pay Plaintiffs and the Class spread of hour wages as required by NYLL;

e.    Whether Defendants made unlawful deductions from the wages of Plaintiffs and the Class in violation of NYLL;

f.   Whether Defendants unlawfully failed to timely pay Plaintiffs and the Class their earned wages, in violation of NYLL § 191(1)(a)(i);

g.    Whether Defendants unlawfully failed to provide Plaintiffs and the Class with payroll notices at the start of their employment, or at any point thereafter, in violation of NYLL § 195(1);

h.   Whether Defendants unlawfully failed to provide Plaintiffs and the Class, with each wage payment, a statement listing their rates of pay and basis thereof and anything otherwise required by NYLL § 195(3);

i.   Whether Defendants filed fraudulent information returns with the IRS as to the Plaintiffs and the Class ;

j.   Whether Defendants' violations of the Internal Revenue Code were willful;

k. Whether Plaintiffs and the Class are entitled to damages, and if so, the means of measuring such damages;

l. Whether Defendants are liable for Plaintiffs' and the Class members' attorneys' fees and costs; and

m. Whether Defendants are liable for liquidated damages.

## V. Corporate Combine, Alter Ego, De Facto Merger, and Mere Continuation

44. At all relevant times, CCI, CCS, Jab, and Agra Masonry operated in conjunction with each other and as one enterprise.

45. Each Shvartsberg, Caputo, and Furman, could and would make decisions on projects, including relating to employees.

46. CCI, CCS, Jab, and Agra Masonry each would work in conjunction with each other at the same job sites for the same owners and/or general contractors, often using the same employees. Many times the employees while working at the same job site, for the same supervisors, under the same contract, would be paid by one of CCI, CCS, Jab, and Agra Masonry one week and then be paid by a different one of CCI, CCS, Jab, and Agra Masonry in the following week, despite having no changes to their employment.

47. For much of the relevant time, CCI, CCS, Jab, and Agra Masonry did not formally announce a merger or that they were operating as one enterprise; however, on or around October 14, 2019, Agra Masonry informed its clients that Agra Masonry and CCI have come to an agreement to formally merge companies and that moving forward Agra Masonry and CCI would begin conducting business as a single company under the name of CCI.

48. Upon information and belief, upon the merger between CCI and Agra Masonry, CCI caused its insurance carrier to add all existing clients of Agra Masonry as additional insured parties on its various insurance policies.

49. Upon information and belief, upon its merger with CCI, Agra Masonry requested that all of its clients assign existing contracts to CCI and CCI effectively took over all of the contracts maintained by Agra Masonry.

50. Upon information and belief, upon the merger between Agra Masonry and CCI, funds for existing and new contracts were paid to CCI.

51. Upon information and belief, there was no separation of books and records by and between CCI and Agra Masonry, thus breaching all corporate formalities.

52. On or around June 30, 2020, Furman created Agra Industries.

53. Following the creation of Agra Industries, much, if not all, of CCI, CCS, Jab, and Agra Masonry's business began being conducted through Agra Industries.

54. Each Shvartsberg, Caputo, and Furman, were in control of Agra Industries.

55. Agra Industries used many of the same employees as CCI, CCS, Jab, and Agra Masonry. Many times the employees while working at the same job site, for the same supervisors, under the same contract, would be paid by one of CCI, CCS, Jab, and Agra Masonry one week and then be paid by Agra Industries in the following week, despite having no changes to their employment.

56. Soon after Agra Industries was created, CCI, CCS, Jab, and Agra Masonry ceased most, if not all, operations and continued its business through Agra Industries.

57. Upon information and belief, Agra Industries was created to become a successor to CCI, CCS, Jab, and Agra Masonry once Agra Industries was able to own sufficient general liability

10

insurance. In order to achieve this, CCI, CCS, Jab, and Agra Masonry diverted contracts and jobs to Agra Industries to allow their operations to continue through Agra Industries without interruption and to avoid the liabilities of CCI, CCS, Jab, and Agra Masonry.

## VI. Factual Allegations

<u>Florentino Bermudez</u>

<u>Work Schedule and Rates of Pay</u>

58.     Bermudez was employed by Defendants as a mason from in or around February 2018 until on or around August 28, 2020.

59.     As a mason, Bermudez's primary job duties included, *inter alia*, installing stone, brick, and concrete blocks; applying stucco to wall surfaces; transporting work materials, including stone, brick, and concrete blocks to the work area; cleaning his work area; and performing other construction and masonry related tasks as required.

60.     From in or around February 2018 until on or around August 28, 2020, Bermudez regularly worked five (5) days per week, approximately every week, as follows: Mondays through Fridays from approximately 7:00 a.m. until 5:30 p.m., with a daily fifteen (15) minute morning break and a thirty (30) minute lunch break, for a total of approximately 48.75 hours worked per week.

61.     In addition to the aforementioned work hours, approximately twice a month from in or around February 2018 until on or around August 28, 2020, Bermudez was also required to work on Saturdays from approximately 9:00 a.m. to approximately 3:30 p.m., with a fifteen (15) minute morning break and thirty (30) minute lunch break, for a total of 54.5 hours worked per week during the weeks in which Bermudez was required to work on Saturdays.

62.     Bermudez was compensated at the flat rate of $30 per hour for all hours worked, and was not paid the overtime premium of one and one half times his regular rate of pay for the 14.5 overtime hours he worked during the approximate two weeks per month that he was required to work on Saturday, or the 8.75 overtime hours he worked during the weeks in which he was not required to work on Saturday.

63.     Throughout Bermudez's employment, Defendants tracked his work hours on time sheets.

64.     While Bermudez was typically able to sign in on the time sheets at the beginning of the day, Defendants did not make the time sheets available to Bermudez at the end of his work day. As a result, Bermudez was not able to sign out on the time sheets.

65.     Throughout Bermudez's employment with Defendants, he was compensated at a rate of $30.00 per hour for all hours worked, including all hours worked in excess of forty (40) per week.

66.     Although Bermudez's hourly rate was $30.00 during his employment with Defendants, on several occasions Defendants incorrectly compensated Bermudez at a rate of $17.00 per hour for all hours worked, including all hours worked in excess of forty (40) per week.

67.     Throughout Bermudez's employment, Defendants compensated Bermudez partially by payroll check and partially in cash.

68.     The cash portion of Bermudez's wages was delivered to him in cash payment envelopes, reflecting Bermudez's name and the amount of cash wages that the envelope was supposed to contain. The amount of cash wages indicated on each envelope reflected his hourly rate for all hours worked, rather than the proper overtime rate for hours worked in excess of forty (40) per week.

12

69.     Furthermore, when Bermudez counted the cash wages found inside of the cash payment envelope each week, the total amounted to approximately $275.00 to $380.00 less than the amount reflected on the cash payment envelope.

70.     As a result, Defendants unlawfully deducted approximately $275.00 to $380.00 per week from the cash wages portion of Bermudez's compensation.

<u>Fraudulent Filing of Information Returns</u>

71.     The Internal Revenue Service ("IRS") W-2 Forms that Defendants issued to Bermudez for the tax years 2019 and 2020 only reflected the wages Defendants paid to Bermudez via payroll check during each such year, and failed to reflect the wages Defendants paid to Bermudez in cash during each such year.

72.     As a result, the W-2 Forms that Defendants issued to Bermudez for tax years 2019 and 2020 did not reflect all wages that Defendants paid to Bermudez during each such year.

73.     Upon information and belief, Defendants filed the W-2 Forms issued to Bermudez for the tax years 2019 and 2020 with the IRS.

74.     Defendants willfully filed false information returns with the IRS as to Bermudez's wages, in violation of 26 U.S.C. § 7434.

<u>Franklyn Archer</u>

<u>Work Schedule and Rates of Pay</u>

75.     Archer was employed by Defendants as a mason from in or around February 2019 until on or around August 18, 2020, and then again from on or around February 22, 2021 until on or around March 30, 2021.

76.     As a mason, Archer's primary job duties included, *inter alia*, installing stone, brick, and concrete blocks; transporting work materials, including stone, brick, and concrete blocks to

the work area; cleaning his work area; and performing other construction and masonry related tasks as required.

77.    From in or around February 2019 until on or around August 18, 2020 and from on or around February 22, 2021 until on or around March 30, 2021, Archer worked five (5) days per week, approximately every week as follows: Mondays through Fridays from approximately 7:00 a.m. until approximately 3:30 p.m., with a fifteen (15) minute morning break and thirty (30) minute lunch break, for a total of approximately 38.75 hours worked per week.

78.    In addition to the aforementioned work hours, from in or around February 2019 until on or around August 18, 2020, Archer was also required to work on Saturdays approximately two (2) to three (3) weeks per month, from approximately 9:00 a.m. until approximately 3:30 p.m., with a fifteen (15) minute morning break and thirty (30) minute lunch break, for a total of approximately 44.5 hours worked per week when Archer worked on Saturdays.

79.    Archer was compensated at a flat rate for all hours worked in a worked, and was not paid the overtime premium of one and one half time his regular rate of pay for the 4.50 overtime hours he worked approximately every week..

80.    Throughout Archer's employment, Defendants tracked his work hours on time sheets provided by Defendants.

81.    While Archer was typically able to sign-in on the time sheets at the beginning of the day, Defendants did not make the time sheets available to Archer at the end of his work day. As a result, Archer was not able to sign-out on the time sheets.

82.    Throughout his employment with Defendants, Archer was compensated at a rate of $30.00 per hour for all hours worked, including all hours worked in excess of forty (40) per week.

83.    Although Archer's hourly rate was $30.00, on several occasions Defendants compensated Archer at a rate of $17.00 per hour for all hours worked, including all hours worked in excess of forty (40) per week.

84.    Throughout Archer's employment, Defendants compensated Archer partially in payroll check and partially in cash.

85.    The cash portion of Archer's wages was delivered to him in cash payment envelopes, reflecting Archer's name and the amount of cash wages that the envelope was supposed to contain. The amount of cash wages indicated on each envelope reflected his hourly rate for all hours worked, rather than the proper overtime rate for hours worked in excess of forty (40) per week.

86.    Furthermore, from in or around February 2019 until on or around August 18, 2020, when Archer counted the cash wages found inside of the cash payment envelope each week, the total amounted to approximately $90.00 to $250.00 less than the amount reflected on the cash payment envelope.

87.    As a result, from in or around February 2019 until on or around August 18, 2020, Defendants unlawfully deducted approximately $90.00 to $250.00 per week from the cash wages portion of Archer's compensation.

Fraudulent Filing of Information Returns

88.    The IRS W-2 Forms that Defendants issued to Archer for the tax years 2019, 2020, and 2021 only reflected the wages Defendants paid to Archer via payroll check during each such year, and failed to reflect the wages Defendants paid to Archer in cash during each such year.

89.    As a result, the W-2 Forms that Defendants issued to Archer for tax years 2019, 2020, and 2021 did not reflect all wages that Defendants paid to Archer during each such year.

90.     Upon information and belief, Defendants filed the W-2 Forms issued to Archer for the tax years 2019, 2020, and 2021 with the IRS.

91.     Defendants willfully filed false information returns with the IRS as to Archer's wages, in violation of 26 U.S.C. § 7434.

<u>Retaliation Against Archer</u>

92.     On or around August 4, 2020, Archer advised one of Defendants' foremen, Orlando Ordonez, that he was being incorrectly compensated at a rate of $17.00 per hour for all hours worked. Ordonez responded that Archer should discuss the issue with another one of Defendants' foremen, Juan (last name unknown).

93.     A few days thereafter, Archer advised Juan that that he was being incorrectly compensated at a rate of $17.00 per hour for all hours worked. Juan responded that he would discuss the issue with management.

94.     On or around August 17, 2020, Juan advised Archer that Defendants were terminating Archer's employment.

95.     On or around August 18, 2020, Archer, along with Martinez, went to Defendants' main office located at 50 Pennsylvania Ave Brooklyn, New York 11207 (the "Main Office"). Archer and Martinez advised one of the employees at the Main Office that Defendants had not properly compensated them throughout their employment with Defendants. Archer and Martinez advised the employee that they were within their rights to receive their promised rates of pay as well as overtime pay.

96.     Specifically, Archer complained that Defendants compensated him at a rate of $17.00 per hour although his actual hourly rate of pay was $30.00 per hour, per his latest agreement with Defendants.

16

97.     Archer also complained that Defendants failed to compensate him at a rate of 1.5 times his regular rate of pay for all hours worked in excess of forty (40) per week.

98.     While at the Main Office, Archer and Martinez also spoke to Juan. Juan became irate with Archer and Martinez for involving the Main Office, and told Archer and Martinez that they should not have brought their wage complaints to the Main Office.

99.     Juan ordered Archer and Martinez to leave, and told Archer and Martinez that they were no longer needed by Defendants, thus terminating their employment.

100.    Although Archer attempted to return to work shorty thereafter, Juan did not allow him to do so and reminded him that Defendants had terminated his employment.

101.    On or around February 22, 2021, Archer resumed working for Defendants until on or around March 30, 2021, when Defendants abruptly terminated his employment once again.

102.    Specifically, on or around March 30, 2021, Ordonez advised Archer that Juan had informed him that Archer was considering filing a lawsuit against Defendants. Ordonez told Archer that as a result, Archer could no longer work for Defendants.

<u>Miguel Martinez</u>

<u>Work Schedule and Rates of Pay</u>

103.    Martinez was employed by Defendants as a laborer from in or around August 2016 until on or around August 18, 2020, except for the months of October 2018 and November 2018.

104.    As a laborer, Martinez's primary job duties included, *inter alia*, cutting concrete blocks, stone, and bricks; mixing cement; setting up scaffolding; and performing other construction related tasks as required.

105.    Approximately two weeks per month, from in or around August 2016 until on or around August 18, 2020, except for the months of October 2018 and November 2018, Martinez

worked five (5) days per week, approximately every week, as follows: Mondays through Fridays from approximately 7:00 a.m. until approximately 3:30 p.m., with a daily fifteen (15) minute morning break and thirty (30) minute lunch break, for a total of approximately 38.75 hours worked per week.

106.    Approximately two weeks per month throughout his employment with Defendants, Martinez worked five (5) days per week, as follows: Mondays through Fridays from approximately 7:00 a.m. until approximately 5:30 p.m., with a daily fifteen (15) minute morning break and thirty (30) minute lunch break, for a total of approximately 48.75 hours worked per week.

107.    Martinez was compensated at a flat rate for all hours worked in a week, and was not paid the overtime premium of one and one half times his regular rate of pay for the 8.75 overtime hours he worked approximately two weeks per month.

108.    Throughout Martinez's employment, Defendants tracked his work hours on time sheets.

109.    While Martinez was typically able to sign-in on the time sheets at the beginning of the day, Defendants did not make the time sheets available to Martinez at the end of his work day. As a result, Martinez was not able to sign-out on the time sheets.

110.    From in or around August 2016 until in or around December 2017, Defendants compensated Martinez at a rate of $17.00 per hour for up to a maximum of forty (40) hours per week via payroll check, and failed to compensate Martinez for all hours worked in excess of forty (40) per week.

111.    From in or around January 2018 until on or around August 18, 2020, Defendants compensated Martinez at a rate of $20.00 per hour for approximately thirty (30) to forty (40) hours per week via payroll check, plus an additional $80.00 to $95.00 per week in cash.

18

112.    Although Martinez's rate of pay was $20.00 per hour during the foregoing period, on several occasions Defendants incorrectly compensated Martinez at a rate of $15.00 per hour or $17.00 per hour.

113.    From in or around January 2018 until on or around August 18, 2020, Defendants delivered the cash portion of Martinez's wages in cash payment envelopes, which reflected Martinez's name and the amount of cash wages that the envelope was supposed to contain.

114.    Furthermore, when Martinez counted the cash wages found inside of his cash payment envelope each week, the total amounted to approximately $80.00 to $95.00 per week, which was typically less than the amount reflected on the front of the cash payment envelopes Martinez received.

115.    As a result, from in or around January 2018 until on or around August 18, 2020, Defendants unlawfully deducted wages from the cash wages portion of Martinez's compensation.

<u>Fraudulent Filing of Information Returns</u>

116.    The IRS W-2 Forms that Defendants issued to Martinez for the tax years 2019 and 2020 only reflected the wages Defendants paid to Martinez via payroll check during each such year, and failed to reflect the wages that Defendants paid to Martinez in cash during each such year.

117.    As a result, the W-2 Forms that Defendants issued to Martinez for tax years 2019 and 2020 did not reflect all wages that Defendants paid to Martinez during each such year.

118.    Upon information and belief, Defendants filed the W-2 Forms issued to Martinez for the tax years 2019 and 2020 with the IRS.

119.    Defendants willfully filed false information returns with the IRS as to Martinez's wages, in violation of 26 U.S.C. § 7434.

19

<u>Retaliation Against Martinez</u>

120.  On or around August 17, 2020, Juan requested that Martinez work an additional hour.

121.  Martinez responded that Defendants did not properly compensate him with overtime wages for all overtime hours he had worked throughout his employment and that as a result, he was unable to work an additional hour on said day.

122.  Juan advised Martinez that if he did not work an additional hour on that day, he should not come back to work the next day.

123.  Given Defendants' failure to properly compensate him for all hours worked, including overtime hours, Martinez did not work an additional hour as requested by Juan.

124.  On or around August 18, 2020, Martinez, along with Archer, went to Defendants' Main Office. Martinez and Archer advised one of the employees at the Main Office that Defendants had not properly compensated them throughout their employment with Defendants. Martinez and Archer advised the employee that they were within their rights to receive their promised rate of pay as well as overtime pay.

125.  Specifically, Martinez complained that Defendants failed to compensate him at a rate of 1.5 times his regular rate of pay for all hours worked in excess of forty (40) per week.

126.  While at the Main Office, Martinez and Archer also spoke to Juan. Juan became irate with Martinez and Archer for involving the Main Office, and told Martinez and Archer that they should not have brought their wage complaints to the Main Office.

127.  Juan began yelling at Martinez, and threatened to physically strike Martinez.

128.  Juan then ordered Martinez and Archer to leave, and told Martinez and Archer that they were no longer needed by Defendants, thus terminating their employment.

20

<u>Oscar Suazo</u>

<u>Work Schedule and Rates of Pay</u>

129.    Suazo was employed by Defendants as a laborer from in or around September 2017 until on or around August 21, 2020.

130.    As a laborer, Suazo's primary job duties included, *inter alia*, mixing cement; setting up scaffolding; transporting cement blocks, bricks, and stones to work sites; and performing other construction related tasks as required.

131.    Approximately one (1) to two (2) weeks per month from in or around September 2017 until on or around August 21, 2020, Suazo worked five (5) days per week, approximately every week, as follows: Mondays through Fridays from approximately 7:00 a.m. until approximately 3:30 p.m., with a fifteen (15) minute morning break and thirty (30) minute lunch break, for a total of approximately 38.75 hours worked per week.

132.    Approximately two (2) to three (3) weeks per month from in or around September 2017 until on or around August 21, 2020, Suazo worked six (6) days per week, as follows: Mondays and Tuesdays from approximately 7:00 a.m. until approximately 3:30 p.m.; Wednesdays through Fridays from approximately 7:00 a.m. until approximately 5:30 p.m.; and Saturdays from approximately 7:00 a.m. to 3:00 p.m., with a daily fifteen (15) minute morning break and thirty (30) minute lunch break, for a total of approximately 52 hours worked per week.

133.    Suazo was compensated at a flat rate for all hours worked per week, and was not paid the overtime premium of one and one half times his regular rate of pay for the 12 overtime hours he worked approximately every week.

134.    Throughout Suazo's employment, Defendants tracked his work hours on time sheets provided by Defendants.

135.    While Suazo was typically able to sign-in on the time sheets at the beginning of the day, Defendants did not make the time sheets available to Suazo at the end of his work day. As a result, Suazo was not able to sign-out on the time sheets.

136.    From in or around September 2017 until in or around August 2019, Suazo was paid at a rate of $20.00 per hour for all hours worked, including all hours worked in excess of forty (40) per week.

137.    During the foregoing period, Defendants compensated Suazo partially by payroll check and partially by personal check.

138.    From in or around September 2019 until in or around May 2020, Suazo was paid at a rate of $20.00 per hour for approximately twenty-two (22) hours of work per week.

139.    During the foregoing period, Defendants compensated Suazo by payroll check.

140.    From in or around June 2020 until on or around August 21, 2020, Suazo was paid at a rate of $22.00 per hour for approximately twenty-two (22) hours per week.

141.    During the foregoing period, Defendants compensated Suazo by payroll check.

142.    From in or around September 2019 until on or around August 21, 2020, Defendants repeatedly advised Suazo that he would be compensated in cash for the hours beyond twenty-two (22) that he worked each week.

143.    However, Defendants did not provide Suazo with such cash payments and thus failed to compensate Suazo for any hours worked in excess of approximately twenty-two (22) hours per week from in or around September 2019 until on or around August 21, 2020.

144.    Furthermore, on several occasions throughout Suazo's employment, Defendants incorrectly compensated Suazo at a rate of $15.00 per hour or at a rate of $17.00 per hour.

22

Fraudulent Filing of Information Returns

145.    The IRS W-2 Forms that Defendants issued to Suazo for the tax years 2017, 2018, and 2019 only reflected the wages Defendants paid to Suazo via payroll check during each such year and did not reflect the wages Defendants paid to Suazo via personal check during each such year.

146.    As a result, the W-2 Forms that Defendants issued to Suazo for tax years 2017, 2018, and 2019 did not reflect all wages that Defendants paid to Suazo during each such year.

147.    Upon information and belief, Defendants filed the W-2 Forms issued to Suazo for the tax years 2017, 2018, and 2019 with the IRS.

148.    Defendants willfully filed false information returns with the IRS as to Suazo's wages, in violation of 26 U.S.C. § 7434.

**Defendants' Violations of the FLSA, NYLL, and 26 U.S.C. § 7434**

149.    Throughout their employment, Plaintiffs, the FLSA Collective Plaintiffs, and the Class were non-exempt employees pursuant to the FLSA and the NYLL, and were entitled to receive compensation for all hours worked, including their regular hourly rate or the minimum wage rate, whichever is greater, for all hours worked up to forty (40) per week; and overtime compensation of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) per week.

150.    However, despite routinely working more than forty (40) hours per week, Plaintiffs, the FLSA Collective Plaintiffs, and the Class were not paid overtime compensation of one and one-half (1.5) times their regular hourly rate of pay for all hours they worked over forty (40) per week.

151. Moreover, Plaintiffs Martinez and Suazo, the FLSA Collective Plaintiffs, and the Class were not paid for all of the hours they worked during their employment with Defendants.

152. Furthermore, although Plaintiffs Martinez and Suazo and the Class regularly worked shifts that spanned more than ten (10) hours per day, Defendants failed to compensate Plaintiffs Martinez and Suazo and the Class with an additional hour's pay at the minimum wage rate for every day in which their shifts exceed ten (10) hours.

153. Defendants also made unlawful deductions from Plaintiffs' and the Class' wages in violation of NYLL § 193(1).

154. Defendants also failed to furnish to Plaintiffs and the Class, at the time they were hired or at any time thereafter, a notice containing their rates of pay, the designated payday, or other information required by NYLL § 195(1).

155. Furthermore, Plaintiffs and the Class did not receive, with each wage payment, a statement listing their regular and overtime rates of pay, the number of regular and overtime hours worked, gross wages, deductions, and anything otherwise required by NYLL § 195(3).

156. By failing to provide Plaintiffs and the Class with payroll notices and wage statements as required by NYLL §§ 195(1) and (3), Defendants deprived Plaintiffs and the Class of their statutory rights to be provided with complete and accurate information about the terms and conditions of their compensation, including their regular rate of pay, their overtime rate, the amount of compensation paid for regular work hours, the amount of compensation paid for overtime hours, and the amount of compensation paid for spread of hour wages.

157. Defendants' failure to provide Plaintiffs and the Class with such information caused Plaintiffs and the Class to endure uncertainty regarding their wages and hindered their ability to take action to correct Defendants' wage and hour violations as Defendants deprived Plaintiffs and

24

the Class of the means to confirm that they were being compensated in accordance with the terms of their employment and with the requirements of federal and state law.

158.    As a result, Defendants injured Plaintiffs and the Class by denying them the right to complete and accurate information about terms of their compensation, which resulted in the underpayment of their wages.

159.    Defendants violated federal and state law by willfully failing to pay Plaintiffs, the FLSA Collective Plaintiffs, and the Class overtime compensation; by failing to pay Plaintiffs Martinez and Suazo, the FLSA Collective Plaintiffs, and the Class the applicable minimum wages for all of the hours they worked; by failing to pay Plaintiffs Martinez and Suazo and the Class spread of hour wages; by making unlawful deductions from Plaintiffs' and the Class' wages; by failing to timely pay Plaintiffs' and the Class' wages; by failing to provide Plaintiffs and the Class with the required payroll notices and wage statements; by retaliating against Plaintiffs Archer and Martinez; and by willfully filing false information returns as to Plaintiffs' and the Class' wages, in violation of 26 U.S.C. § 7434.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
*(Overtime Violations Under the FLSA)*

160.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

161.    Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

162.    Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

163.    Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay for each hour worked in excess of forty (40) hours in a week.

164.    As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

165.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to liquidated damages.

166.    Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY AND THE CLASS PLAINTIFFS**
(*Overtime Violations Under the NYLL*)

167.    Plaintiffs, on behalf of themselves and the Class, repeat and reallege all prior allegations set forth above.

168.    Pursuant to the applicable provisions of the NYLL, Plaintiffs and the Class were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

169.    Plaintiffs and the Class regularly worked in excess of forty (40) hours per week during their employment with Defendants.

170.    Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the Class overtime wages of one and one-half (1.5) times their regular hourly rate of pay for each hour worked in excess of forty (40) hours in a week.

171.    As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class the required overtime wages, Plaintiffs and the Class have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

172.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the Class are entitled to liquidated damages.

173.    Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Second Cause of Action in the amount of their unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF
PLAINTIFFS MARTINEZ AND SUAZO, INDIVIDUALLY, AND
THE FLSA COLLECTIVE PLAINTIFFS**
*(Minimum Wage Violations under the FLSA)*

174.    Plaintiffs Martinez and Suazo, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

175.    Pursuant to the applicable provisions of the FLSA, Plaintiffs Martinez and Suazo and the FLSA Collective Plaintiffs were entitled to the statutory minimum hourly wages for all of the hours they worked.

27

176. Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs Martinez and Suazo and the FLSA Collective Plaintiffs the statutory minimum wages for all of the hours they worked.

177. As a result of Defendants' violations of the law and failure to pay Plaintiffs Martinez and Suazo and the FLSA Collective Plaintiffs the required minimum wages, Plaintiffs Martinez and Suazo and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

178. As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs Martinez and Suazo and the FLSA Collective Plaintiffs are entitled to liquidated damages.

179. Judgment should be entered in favor of Plaintiffs Martinez and Suazo and the FLSA Collective Plaintiffs and against Defendants on the Third Cause of Action in the amount of their respective unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS MARTINEZ AND SUAZO, INDIVIDUALLY AND THE CLASS PLAINTIFFS**
*(Minimum Wages Violations under the NYLL)*

180. Plaintiffs Martinez and Suazo, on behalf of themselves and the Class, repeat and reallege all prior allegations set forth above.

181. Pursuant to the applicable provisions of the NYLL, Plaintiffs Martinez and Suazo and the Class were entitled to receive at least the statutory minimum wages for all of the hours they worked.

28

182.    Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs Martinez and Suazo and the Class at least the statutory minimum wages for all of the hours he worked.

183.    As a result of Defendants' violations of the law and failure to pay Plaintiffs Martinez and Suazo and the Class the required minimum wages, Plaintiffs Martinez and Suazo and the Class have been damaged and are entitled to recover from Defendants all minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

184.    As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs Martinez and Suazo and the Class are entitled to liquidated damages.

185.    Judgment should be entered in favor of Plaintiffs Martinez and Suazo and the Class and against Defendants on the Fourth Cause of Action in the amount of their unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS MARTINEZ AND SUAZO, INDIVIDUALLY AND THE CLASS PLAINTIFFS**
*(Spread of Hours Violations under the NYLL)*

186.    Plaintiffs Martinez and Suazo, on behalf of themselves and the Class, repeat and reallege all prior allegations set forth above.

187.    Plaintiffs Martinez and Suazo and the Class regularly worked shifts that spanned more than ten (10) hours per day.

188.    Defendants willfully failed to pay Plaintiffs Martinez and Suazo and the Class additional compensation of one (1) hour's pay at the basic minimum hourly wage rate for each day during which they worked more than ten (10) hours.

29

189. By failing to pay Plaintiffs Martinez and Suazo and the Class spread of hours pay, Defendants have willfully violated NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

190. Judgment should be entered in favor of Plaintiffs Martinez and Suazo and the Class and against Defendants on the Fifth Cause of Action in the amount of their unpaid spread of hours wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY AND THE CLASS PLAINTIFFS**
(*Unlawful Deductions from Wages Under the NYLL*)

191. Plaintiffs, on behalf of themselves and the Class, repeat and reallege all prior allegations set forth above.

192. Pursuant to the provisions of NYLL § 193(1), employers are prohibited from making any deductions from the wages of an employee, except in limited circumstances.

193. During the relevant period, Defendants made unlawful deductions from Plaintiffs' and the Class' weekly wages.

194. Defendants' deductions from Plaintiffs' and the Class' wages violated NYLL § 193(1).

195. Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Sixth Cause of Action in the amount of Plaintiffs' and the Class' unlawfully deducted wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY AND THE CLASS PLAINTIFFS
### (*Failure to Timely Pay Wages under the NYLL*)

196. Plaintiffs, on behalf of themselves and the Class, repeat and reallege all prior allegations set forth above.

197. Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiffs and the Class were entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

198. During the relevant period, Defendants routinely failed to pay Plaintiffs and the Class all of their earned wages in accordance with the agreed-upon terms of employment.

199. During the relevant period, Defendants failed to timely pay Plaintiffs and the Class all of their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

200. Throughout the relevant period, Defendants failed to timely pay Plaintiffs and the Class all wages earned by Plaintiffs, in violation of NYLL § 191(1)(a)(i).

201. As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class in accordance with NYLL § 191(1)(a)(i), Plaintiffs and the Class have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

202. As Defendants did not have a good faith basis to believe that their failure to pay wages was in compliance with the law, Plaintiffs and the Class are entitled to liquidated damages.

203. Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Seventh Cause of Action for all wages due, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR AN EIGHTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS INDIVIDUALLY AND THE CLASS PLAINTIFFS**
(*Failure to Provide Payroll Notices Under the NYLL*)

204.    Plaintiffs, on behalf of themselves and the Class, repeat and reallege all prior allegations.

205.    Defendants failed to furnish to Plaintiffs and the Class, at their time of hire or at any time thereafter, notices containing their rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; their regular pay day designated by the employer; and other information required by NYLL § 195(1).

206.    As Defendants failed to provide Plaintiffs and the Class with payroll notices as required by NYLL § 195(1), Plaintiffs and the Class are entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

207.    Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Eighth Cause of Action in the amount of $5,000.00 each, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A NINTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS INDIVIDUALLY AND THE CLASS PLAINTIFFS**
(*Failure to Provide Wage Statements Under the NYLL*)

208.    Plaintiffs, on behalf of themselves and the Class, repeat and reallege all prior allegations.

209.    Throughout the relevant time period, Defendants failed to furnish to Plaintiffs and the Class, with each wage payment, a statement listing: their regular and overtime rates of pay and basis thereof; the number of regular and overtime hours they worked; gross wages; deductions;

32

allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

210. As Defendants failed to provide Plaintiffs and the Class with wage statements as required by NYLL § 195(3), Plaintiffs and the Class are entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

211. Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Ninth Cause of Action in the amount of $5,000.00 each, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A TENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS ARCHER AND MARTINEZ
### (*Retaliation Under the FLSA*)

212. Plaintiffs Archer and Martinez repeat and reallege all prior allegations set forth above.

213. Defendants terminated Plaintiffs Archer's and Martinez's employment in retaliation for their attempt to assert their legal rights under the FLSA.

214. Defendants did not have any legitimate, non-retaliatory reason for terminating Plaintiffs Archer's and Martinez's employment.

215. Defendants' termination of Plaintiffs Archer's and Martinez's employment constitutes unlawful retaliation in violation of the FLSA, 29 U.S.C. § 215(a)(3).

216. As a result of Defendants' violations of the law, Plaintiffs Archer and Martinez have been damaged and are entitled to recover from Defendants emotional and punitive damages, if applicable, along with lost wages, front pay, liquidated damages, reasonable attorneys' fees, and costs.

33

217.    Judgment should be entered in favor of Plaintiffs Archer and Martinez and against Defendants on the Tenth Cause of Action for emotional and punitive damages, if applicable, lost wages, front pay, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS ARCHER AND MARTINEZ
(*Retaliation Under the NYLL*)

218.    Plaintiffs Archer and Martinez repeat and reallege all prior allegations set forth above.

219.    Defendants' termination of Plaintiffs Archer's and Martinez's employment constitutes unlawful retaliation in violation of NYLL § 215.

220.    As a result of Defendants' violations of the law, Plaintiffs Archer and Martinez have been damaged and are entitled to recover from Defendants emotional and punitive damages, if applicable, along with lost wages, front pay, liquidated damages, reasonable attorneys' fees, and costs.

221.    Judgment should be entered in favor of Plaintiffs Archer and Martinez and against Defendants on the Eleventh Cause of Action for emotional and punitive damages, if applicable, lost wages, front pay, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A TWELFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS INDIVIDUALLY AND THE CLASS PLAINTIFFS
(*Fraudulent Filing of Information Returns Under 26 U.S.C. § 7434*)

222.    Plaintiffs, on behalf of themselves and the Class, repeat and reallege all prior allegation set forth above.

223.    Throughout the relevant period, Defendants paid Plaintiffs Bermudez, Archer, and Martinez their wages partially by payroll check and partially in cash.

34

224. Throughout the relevant period, Defendants paid Plaintiff Suazo his wages partially by payroll check and partially by personal check.

225. Throughout the relevant period, Defendants also paid the Class their wages partially by payroll check and partially in cash or personal check.

226. Defendants provided Plaintiffs and the Class with copies of the IRS W-2 Forms that Defendants filed with the IRS each calendar year, which reflected only the wages paid to Plaintiffs and the Class via payroll check and failed to reflect the wages paid to Plaintiffs and the Class via cash or personal check.

227. An IRS W-2 Form is an information return as defined by 26 U.S.C. § 6724(d)(1).

228. Defendants were aware of their duty to accurately report to the IRS all wages paid to Plaintiffs and the Class.

229. Defendants were aware that the IRS W-2 Forms they issued to Plaintiffs and the Class did not reflect all of the wages paid to Plaintiffs and the Class.

230. Defendants reported fraudulent information to the IRS in violation of 26 U.S.C. § 7434 by filing IRS W-2 Forms with false information regarding the wages payments made to Plaintiffs and the Class, thereby decreasing Defendants' tax liability.

231. As Defendants willfully filed fraudulent information returns in violation of 26 U.S.C. § 7434, Plaintiffs and the Class are each entitled to damages for each fraudulent return in an amount equal to the greater of $5,000.00 or the sum of any actual damages sustained by Plaintiffs for each fraudulent information return, along with the costs of this action and reasonable attorneys' fees.

232. Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Twelfth Cause of Action in an amount equal to the greater of $5,000.00 or the

35

sum of any actual damages sustained by Plaintiffs and the Class for each fraudulent information return, the costs of this action, and reasonable attorneys' fees.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST CCI, CCS, JAB, AGRA MASONRY, AND AGRA INDUSTRIES
*(Corporate Combine)*

233.    Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and the Class, repeat and reallege all prior allegation set forth above.

234.    Upon information and belief, CCI, CCS, Jab, Agra Masonry, and Agra Industries operate and/or operated as a single business operation.

235.    Upon information and belief, CCI, CCS, Jab, Agra Masonry, and Agra Industries records are and/or were maintained by the same persons and entities.

236.    Upon information and belief, CCI, CCS, Jab, Agra Masonry, and Agra Industries employ and/or employed many of the same employees.

237.    Upon information and belief, CCI, CCS, Jab, Agra Masonry, and Agra Industries are and/or were each merely fragments of a larger business.

238.    Upon information and belief, CCI, CCS, Jab, Agra Masonry, and Agra Industries are and/or were not maintained as separate corporate entities.

239.    Judgment should be entered on the Thirteenth Cause of Action in favor of Plaintiffs, the FLSA Collective Plaintiffs, and the Class and against CCI, CCS, Jab, Agra Masonry, and Agra Industries determining they were merely part of a corporate combine and declaring CCI, CCS, Jab, Agra Masonry, and Agra Industries liable for each other's debts and for all amounts due in the First through Twelfth Causes of Action herein, and such other legal and equitable relief as this Court deems just and proper.

36

**AS AND FOR A FOURTEENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Alter Ego)*

240.    Plaintiffs on behalf of themselves, the FLSA Collective Plaintiffs, and the Class, repeat and reallege all prior allegation set forth above.

241.    Upon information and belief, Shvartsberg, Caputo, and Furman are and/or were owners, officers, managers and/or persons in control of CCI, CCS, Jab, Agra Masonry, and Agra Industries and exercised complete dominion and control over the Companies.

242.    CCI, CCS, Jab, Agra Masonry, and Agra Industries share common ownership and/or control (Shvartsberg, Caputo, and Furman) and employees.

243.    Shvartsberg, Caputo, and Furman caused CCI, CCS, Jab, Agra Masonry, and Agra Industries to operate as a single enterprise to protect their assets from creditors.

244.    Upon information and belief, Shvartsberg, Caputo, and Furman caused CCI, CCS, Jab, and Agra Masonry to transfer and operate its business through Agra Industries to avoid paying creditors of CCI, CCS, Jab, and Agra Masonry.

245.    Shvartsberg, Caputo, and Furman used their domination and control of CCI, CCS, Jab, Agra Masonry, and Agra Industries to commit fraud or wrong against Plaintiffs, the FLSA Collective Plaintiffs, and the Class causing injury to them in that substantially all of CCI, CCS, Jab, and Agra Masonry's business was transferred to Agra Industries in or around the time that the claims of Plaintiffs, the FLSA Collective Plaintiffs, and the Class arose.

246.    Shvartsberg, Caputo, and Furman essentially left CCI, CCS, Jab, Agra Masonry as empty shells.

247.    The corporate veil should be pierced to impose common liability on all Defendants.

248.    Judgment should be entered on the  Fourteenth Cause of Action in favor of Plaintiffs, FLSA Collective Plaintiffs, and the Class and against Defendants declaring all

37

Defendants liable for each other's debts and for all amounts due in the First through Twelfth Causes of Action herein, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION AGAINST CCI, CCS, JAB, AGRA MASONRY AND AGRA INDUSTRIES**
*(De Facto Merger)*

249.    Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and the Class, repeat and reallege all prior allegation set forth above.

250.    Upon information and belief, there was continuity of ownership between CCI, CCS, Jab, Agra Masonry, and Agra Industries at the time CCI, CCS, Jab, and Agra Masonry substantially ceased their operations and Agra Industries began its operations.

251.    Upon information and belief, at the time that CCI, CCS, Jab, and Agra Masonry ceased their operations and Agra Industries began its operations, Agra Industries assumed the liabilities ordinarily necessary for the uninterrupted continuation of the CCI, CCS, Jab, and Agra Masonry's business.

252.    Upon information and belief, at the time that CCI, CCS, Jab, and Agra Masonry ceased their operations and Agra Industries began its operations, there was continuity of management, personnel, physical location, assets, and CCI, CCS, Jab, and Agra Masonry's business in general by Agra Industries.

253.    Based on the foregoing, Agra Industries actually or impliedly assumed the CCI, CCS, Jab, and Agra Masonry's liabilities.

254.    Judgment should be entered on the Fifteenth Cause of Action in favor of Plaintiffs, the FLSA Collective Plaintiffs, and the Class and against CCI, CCS, Jab, Agra Masonry, and Agra Industries determining that a de facto merger occurred and declaring that CCI, CCS, Jab, Agra Masonry, and Agra Industries are liable for each other's debts and for all amounts due in the First

38

through Twelfth Causes of Action herein, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION AGAINST CCI, CCS, JAB, AGRA MASONRY AND AGRA INDUSTRIES
### *(Mere Continuation)*

255.    Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and the Class, repeat and reallege all prior allegation set forth above.

256.    In or around the beginning of 2021, when CCI, CCS, Jab, and Agra Masonry substantially ceased operating, Agra Industries merely continued CCI, CCS, Jab, and Agra Masonry's business with the same owners, officers, and persons in control.

257.    The only change between CCI, CCS, Jab, and Agra Masonry and Agra Industries was the name of the entity conducting the business.

258.    Judgment should be entered on the Sixteenth Cause of Action in favor of Plaintiffs, the FLSA Collective Plaintiffs, and the Class and against CCI, CCS, Jab, Agra Masonry, and Agra Industries determining that Agra Industries is a mere continuation CCI, CCS, Jab, and Agra Masonry and declaring that CCI, CCS, Jab, Agra Masonry, and Agra Industries are liable for each other's debts and for all amounts due in the First through Twelfth Causes of Action herein, and such other legal and equitable relief as this Court deems just and proper.

WHEREFORE Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and the Class pray for relief as follows:

a)  on the First Cause of Action for all overtime wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

39

b) on the Second Cause of Action for all overtime wages due to Plaintiffs and the Class, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c) on the Third Cause of Action for all minimum wages due to Plaintiffs Martinez and Suazo and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

d) on the Fourth Cause of Action for all minimum wages due to Plaintiffs Martinez and Suazo and the Class, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

e) on the Fifth Cause of Action for all spread of hour wages due to Plaintiffs Martinez and Suazo and the Class, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

f) on the Sixth Cause of Action for all unlawfully deducted wages due to Plaintiffs and the Class, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

g) on the Seventh Cause of Action on behalf of Plaintiffs for all unpaid wages due to Plaintiffs and the Class, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

h) on the Eighth Cause of Action on behalf of Plaintiffs and the Class for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with reasonable attorneys' fees in an amount to be determined by this Court;

i) on the Ninth Cause of Action on behalf of Plaintiffs and the Class for liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 each, along with reasonable attorneys' fees in an amount to be determined by this Court;

j) on the Tenth Cause of Action on behalf of Plaintiffs Archer and Martinez for all emotional and punitive damages, if applicable, along with all lost wages and front pay, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

k) on the Eleventh Cause of Action on behalf of Plaintiffs Archer and Martinez for all emotional and punitive damages, if applicable, along with all lost wages and front pay, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

l) on the Twelfth Cause of Action  on behalf of Plaintiffs and the Class for damages in the amount equal to the greater of $5,000.00 for each fraudulent information return or the sum of any actual damages sustained by Plaintiffs and the Class as well as all reasonable attorneys' fees in an amount to be determined by this Court;

m) on the Thirteenth Cause of Action in favor of Plaintiffs, the FLSA Collective Plaintiffs, and the Class and against CCI, CCS, Jab, Agra Masonry, and Agra Industries determining that they were merely part of a corporate combine and declaring CCI, CCS, Jab, Agra Masonry, and Agra Industries liable for each other's debts and for all amounts due in the First through Twelfth Causes of Action herein;

n) on the  Fourteenth Cause of Action in favor of Plaintiffs, the FLSA Collective Plaintiffs, and the Class and against Defendants declaring all Defendants liable for each

41

other's debts and for all amounts due in the First through Twelfth Causes of Action herein;

o) on the Fifteenth Cause of Action in favor of Plaintiffs, the FLSA Collective Plaintiffs, and the Class and against CCI, CCS, Jab, Agra Masonry, and Agra Industries determining there was a de facto merger and holding and declaring CCI, CCS, Jab, Agra Masonry, and Agra Industries liable for each other's debts and for all amounts due in the First through Twelfth Causes of Action herein;

p) on the Sixteenth Cause of Action in favor of Plaintiffs, the FLSA Collective Plaintiffs, and the Class and against CCI, CCS, Jab, Agra Masonry, and Agra Industries determining that Agra Industries as a mere continuation of CCI, CCS, Jab, and Agra Masonry and declaring CCI, CCS, Jab, Agra Masonry, and Agra Industries liable for each other's debts and for all amounts due in the First through Twelfth Causes of Action herein;

q) Interest;

r) Costs and disbursements; and

s) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 10, 2025

KATZ MELINGER PLLC

By: */s/ Katherine Morales*
Katherine Morales, Esq.
370 Lexington Avenue, Suite 1512
New York, New York 10017
Telephone: (212) 460-0047
Fax: (212) 428-6811
kymorales@katzmelinger.com
*Attorneys for Plaintiffs*

42